UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARTURO ROSA,

Petitioner,

v. CASE NO. 6:15-cv-752-Orl-37TBS

SECRETARY, DEPARTMENT OF CORRECTIONS, et al.,

Respondents.

---

# ORDER

This case is before the Court on Petitioner's Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("Response," Doc. 5) in accordance with this Court's instructions. Petitioner filed a Reply to the Response to the Petition ("Reply," Doc. 9).

Petitioner asserts five grounds for relief. For the following reasons, the Petition is denied.

## I. PROCEDURAL HISTORY

Petitioner was charged by information in case 2008-cf-14624 in the Ninth Judicial Circuit in and for Orange County, Florida with attempted robbery with a firearm and mask. (Doc. 6 at 15). A jury found Petitioner guilty as charged. (*Id.* at 66). The trial court sentenced Petitioner to a twenty-five year term of imprisonment. (*Id*. at 56). Petitioner appealed, and the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam*. (Doc. 6-1 at 21).

Petitioner, through counsel, filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (*Id*. at 25-35). The state court denied the motion. (*Id*. at 39-45). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (*Id*. at 102).

## II. EVIDENCE ADDUCED AT TRIAL

Yu Chang ("Chang") testified that on May 24, 2007, Petitioner came into the convenience store where she worked, wearing a yellow t-shirt over his face and head, and demanded money while pointing a gun at her. (Doc. 6 at 226, 230). Chang said when Petitioner initially approached her, she was scared, but she refused to give him money after she recognized his voice. (*Id*. at 230-31). Chang said she called Petitioner the name by which she generally referred to him, told him she knew who he was, and stated she would give him the money when he took the shirt off his face. (*Id*. at 231, 252-53).

Chang testified that she immediately recognized Petitioner's voice because he had been a regular customer in her store for three years, during which time he came to the store two to three times weekly to purchase items and to cash his government checks each month. (*Id*. at 227-28, 230-32, 252-53). Chang explained that Petitioner has a distinctive voice, which is deep and scratchy. (*Id*. at 233). When Petitioner fled the store, Chang searched her records for Petitioner's most recent check and a copy of his identification. (*Id*. at 227, 239-41). Chang gave them to the police and identified Petitioner as the perpetrator. (*Id*. at 239-41). Chang subsequently identified Petitioner as the perpetrator in a photographic line-up. (*Id*. at 243). The attempted robbery was recorded on video, however, it did not have sound. (*Id*. at 233-37). Chang testified that Petitioner was the same height, weight, and build as the person depicted in the video. (*Id*. at 237). She also identified him in court as the perpetrator. (*Id*. at 232).

Steven Travis ("Travis") testified that on the date of the offense, he observed a man pacing near the convenience store with a yellow t-shirt on his head. (*Id*. at 302-05). Travis said he had a good opportunity to see the individual's face and indicated that the person was approximately 5'9'' tall and weighed approximately 170 pounds. (*Id*.). According to Travis, he picked Petitioner out of a photographic line-up approximately two hours after the offense and he was ninety percent

certain at that time Petitioner was the person he saw outside the store. (*Id*. at 305-06).

Naiza Court ("Court") testified that she was at a business near the convenience store on the date of the offense and as she was going to her car, she observed the offense in progress. (*Id*. at 262-63). Court indicated that she could only see the perpetrator's eyes because of the yellow shirt around his head and that the perpetrator appeared to be older given the wrinkles around his eyes. (*Id*. at 264, 267). Court said she got into her car, moved it, and waited for the perpetrator to exit the store. (*Id*. at 263-66). Court testified that the perpetrator ran behind the store and then passed her car in a grayish/silver, two-door, older model Honda Accord with a for-sale sign in the window. (*Id.* at 266-67). Court said that the photographs of the vehicle shown to her by law enforcement after the offense were similar to the vehicle she saw the day of the offense, and she admitted she told the police that the vehicle in the photos was similar to, but not the same as, the one she observed on the date of the offense. (*Id*. at 274, 276). Court, however, testified at trial that the photographs of the vehicle admitted into evidence depicted the same vehicle used by the perpetrator in the offense. (*Id*. at 276).

Detective Rob Branch testified that when he went several hours after the offense to Petitioner's home located 1.7 miles from the convenience store, he saw a four-door Honda Accord with a for-sale sign in the front windshield in Petitioner's driveway. (*Id*. at 287). Detective Branch said that Petitioner denied committing the offense, and on a later date, Petitioner told him that someone who looked just like Petitioner, had the same voice, and used the same nickname, did bad things in the area where the offense occurred for which Petitioner would get blamed. (*Id.* at 290-91).

## III. LEGAL STANDARDS

### A. Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state

court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard For Ineffective Assistance Of Counsel**

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers'

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## IV. ANALYSIS

### A. Ground One

Petitioner contends that the trial court violated his Sixth and Fourteenth Amendment rights by denying his motion for new trial based on juror misconduct and by refusing counsel's request to interview the juror. (Doc. 1 at 5). In support of this ground, Petitioner maintains that during defense counsel's closing argument, a juror commented that the defense had not put on a case or any evidence. (*Id.*). Petitioner maintains that the trial court's actions prevented him from determining if the juror could be fair and impartial and resulted in a partial jury. (*Id.*). Petitioner does not argue that his Fifth Amendment rights were violated. *See* Doc. Nos. 1 at 5-6; 9 at 4-6.

Petitioner raised this ground on direct appeal. (Doc. Nos. 6 at 370-80; 6-1 at 1-3). The Fifth DCA affirmed *per curiam*.[2] (Doc. 6-1 at 21).

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of

---

[2] The Court notes that although Petitioner couched this ground in the state court as a violation of due process, it does not appear it was raised as a federal issue and he relied solely on state law. *See* Doc. Nos. 6 at 370-80; 6-1 at 1-3. Consequently, it appears that ground one as raised in this Court may be unexhausted and would be procedurally barred from review. *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (holding that the petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal brief discussed federal law or the United States Constitution). However, Respondents did not argue that this ground is procedurally defaulted, and the Court declines to *sua sponte* apply the procedural bar.

impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (citing *In re Oliver*, 333 U.S. 257 (1948) and *Tumey v. State of Ohio*, 273 U.S. 510 (1927)). An impartial jury is one "that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) (citing *inter alia Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984) and *Irvin,* 366 U.S. at 721-23)). "[D]ue process requires the trial judge, if he [or she] becomes aware of a possible source of bias, to 'determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial.'" *Id.* at 477-78 (quoting *Remmer v. United States,* 347 U.S. 227, 230 (1954)). A court's duty of inquiry is equally applicable when the defendant is tried in a state court. *Id.* at 478 (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

> "[T]o obtain a new trial [based on juror misconduct during *voir dire*], a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough* [*Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).] The first prong requires a determination of whether the juror answered honestly, "that is, whether he was aware of the fact that his answers were false." *United States v. Perkins*, 748 F.2d 1519, 1531 (11th Cir.1984).
>
> The second prong, that a correct response would have provided a valid basis for a challenge for cause, requires a showing of actual bias. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir.1992) (citing *Perkins*, 748 F.2d at 1532); *see also United States v. Tutt*, 704 F.2d 1567, 1569 (11th Cir. 1983) ("The defendant is required to demonstrate an actual, identifiable prejudice on the part of the juror."). Actual bias may be shown either "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *BankAtlantic*, 955 F.2d at 1473 (quotation marks omitted).

*United States v. Valencia-Trujillo*, 380 F. App'x 936, 937–38 (11th Cir. 2010). "A claim of alleged bias is ordinarily addressed in a hearing where the judge examines the juror and obtains assurances of the juror's impartiality." *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009) (citing *Brooks*

*v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006)); *see also Smith*, 455 U.S. at 209 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.").

In the instant case, the record reflects that during the defense's closing argument, the parties approached the bench and agreed that a juror had made a statement indicating that the jury had only heard one side of the case.[3] (Doc. 6 at 335-36). Defense counsel asked the trial court to inquire of the jury because the statement appeared to indicate that the jury believed the defense was required to put on a case, and because the defense had not done so, the defense's arguments were not credible. (*Id.* at 336). In response to defense counsel's request, the trial judge stated his intent to instruct the jury regarding the burden of proof. (*Id.*). Defense counsel did not object to the trial judge's proposed response to the juror's statement nor did she request an individual inquiry of the juror. (*Id.*). Before defense counsel resumed her closing argument, the trial court told the jury:

> Just as a point of clarification this brings out something that we talked about in jury selection that the State is required to prove its case. Defense is not required to put on any testimony. The State has rested, defense has rested. Defense has presented arguments for you to consider. The State has to prove its case beyond and to the exclusion of every reasonable doubt and as to each element of the offense. The State has the burden. The defense is not required to prove anything. The State has the burden.

(*Id.* at 336-37). The trial judge asked the jurors if they understood these instructions, and the jurors nodded affirmatively. (*Id.*).

Defense counsel continued her closing argument after which the court again instructed the jury that Petitioner is presumed innocent and is not required to present any evidence and the State has the burden of proving Petitioner's guilt beyond a reasonable doubt. *See* Doc. 6 at 351, 353-54. The trial court further instructed the jury that it had to decide the case based only on the evidence

[3] The trial transcript does not contain the juror's statement. *See* Doc. 6 at 335-36.

presented and that it had to follow the law as provided by the court. *See id*. After the trial concluded, defense counsel filed a motion to interview juror and a motion for new trial based on the juror's comment. (Doc. 6 at 85-89). The state court summarily denied the motion for new trial.[4] (Doc. 6 at 8).

The juror's statement does not demonstrate that the juror failed to answer a material question honestly during *voir dire*. During *voir dire*, the trial judge instructed the venire that the State had to prove Petitioner was guilty beyond a reasonable doubt and that the defense did not have to present any witnesses or do anything, and the venire affirmed it understood this. (Doc. 6 at 137-38). The juror's statement during closing argument does not establish he lied during *voir dire*. Instead, the juror's statement reflects either (1) he misunderstood the law, or (2) a lapse in memory regarding the earlier instructions. In other words, the juror's statement did not evidence dishonesty or partiality. Petitioner, therefore, has not established that the juror misrepresented a material fact or that he was actually biased against Petitioner to warrant a new trial.

In addition, in response to the juror's comment, the trial court immediately instructed the jurors that the State bore the burden of proving Petitioner's guilt and that Petitioner did not have to present any evidence or prove anything. The trial court questioned the jurors to ensure they understood the law on this point. While it may have been advisable for the trial court to conduct a hearing to inquire further of the juror, neither individual inquiry nor a hearing were requested prior to the verdict's return. Due process does not always require a hearing. *See Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (explaining "*Remmer* and *Smith* do not stand for the proposition that any time evidence of juror bias comes to light, due process requires the trial court

[4] It is not clear whether the state court ruled on Petitioner's post-trial motion to interview juror. In addition, although not mentioned by Petitioner in the Petition, it appears that the juror who made the comment served as the jury's foreperson. *See* Doc. 6 at 66, 88.

to question the jurors alleged to have bias. *Smith* states that this 'may' be the proper course, and that a hearing 'is sufficient' to satisfy due process. *Smith* leaves open the door as to whether a hearing is always required and what else may be 'sufficient' to alleviate any due process concerns.") (citation omitted). Given that (1) the juror's statement was made in the presence of the trial court and the parties, (2) the matter did not involve an issue of jury tampering or the jury's consideration of extraneous information, and (3) there is no showing that the juror lied about a material fact, the state court afforded Petitioner all the process required by ensuring the jury understood the State's burden of proof. Consequently, the state court's denial of this ground is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, ground one is denied pursuant to § 2254(d).

**B. Ground Two**

Petitioner contends counsel rendered ineffective assistance by failing to challenge Chang's identification of him in a photographic line-up. (Doc. 1 at 8-10). In support of this ground, Petitioner argues that the photographic line-up was impermissibly suggestive because the photo used in the line-up was the same one Chang provided to law enforcement. (Doc. 6-1 at 102).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-1 at 41-42). The state court concluded that Petitioner failed to demonstrate prejudice in light of the evidence presented. (*Id*.). The Fifth DCA affirmed *per curiam*. (*Id*.).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland.* Chang's identification of Petitioner was based primarily on his voice, and she identified Petitioner as the perpetrator before she was shown the photographic line-up. Furthermore, Travis identified Petitioner shortly after the incident with

ninety percent certainty from a photographic line-up, and a car similar to the one described as the getaway vehicle was observed in Petitioner's driveway on the date of the offense. Therefore, a reasonable probability does not exist that the outcome of the trial would have been different had counsel sought to suppress Chang's photo identification of Petitioner. Accordingly, ground two is denied pursuant to section 2254(d).

**C. Ground Three**

Petitioner maintains counsel rendered ineffective assistance by failing to challenge Chang's voice identification of him. (Doc. 1 at 11-13). In support of this ground, Petitioner complains that Chang's voice identification at trial was unduly suggestive because Petitioner was the sole person to give a voice exemplar. (*Id*.).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 6-1 at 42-43). The state court noted that Chang's voice identification of Petitioner was based on her familiarity of him coupled with his appearance. (*Id*.). The state court reasoned, therefore, that her voice identification was reliable and counsel had no viable basis on which to challenge it. (*Id*.). The Fifth DCA affirmed *per curiam*. (Doc. 6-1 at 102).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. As discussed *supra*, Chang identified Petitioner at the time of the offense as the perpetrator based on her long-term familiarity with his deep, scratchy voice and his appearance. In other words, from the time the offense was committed, Chang was unequivocal that Petitioner was the perpetrator based on her knowledge of him. Therefore, Petitioner has not shown that Chang's voice identification at trial was unreliable, and assuming counsel had challenged the voice identification, Petitioner has not shown that such a challenge would have been successful. Finally, the State presented additional evidence of

Petitioner's guilt that was substantial. Thus, counsel was not deficient for failing to challenge Chang's voice identification at trial of Petitioner, and a reasonable probability does not exist that the outcome of the trial would have been different had counsel done so. Accordingly, ground three is denied pursuant to section 2254(d).

**D. Ground Four**

Petitioner asserts counsel rendered ineffective assistance by failing to call James Cox ("Cox") and Pablo Soto ("Soto") as witnesses. (Doc. 1 at 14-17). Petitioner contends that Cox could have testified that he observed the perpetrator and his car and that neither Petitioner nor his car matched Cox's description. (*Id*. at 14-16). Petitioner further argues that Soto could have testified that when he bought Petitioner's Honda Accord months after the offense, the car could not go over ten miles per hour because it had a bad TSP sensor.[5] (*Id*. at 17).

Petitioner raised this ground in the state court. The state court denied relief pursuant to *Strickland*. (Doc. 6-1 at 43). The state court reasoned that Soto's testimony that the car did not go over ten miles per hour months after the offense was irrelevant. (*Id*.).The state court also reasoned that Petitioner failed to demonstrate that Cox's testimony regarding the damage to the perpetrator's car was so unique as to prove it was not Petitioner's vehicle. (*Id*.). The state court further determined the evidence that a car of the same make and model with a for-sale sign in the window was observed at Petitioner's home shortly after the offense would not likely have been undermined by other witnesses' testimony concerning the amount of damage to the perpetrator's vehicle. (*Id*.). The state court did not explicitly address Petitioner's ground as it related to Cox's description of the perpetrator. (*Id*.). The Fifth DCA affirmed *per curiam*. (Doc. 6-1 at 102).

[5] Petitioner also notes that his son told law enforcement shortly after the incident that the car would not exceed ten miles per hour. *See* Doc. 1 at 16-17. Petitioner, however, does not contend that counsel was ineffective for failing to call his son to testify. *See id*.

The record reflects that Cox gave a statement to police in which he said he saw a Hispanic male, in his early twenties, about 5'6" tall and weighing approximately 130 pounds, wearing a yellow shirt over his face near the convenience store. (Doc. 6 at 29). Cox said he did not see the individual's face. (*Id*.). Although Cox indicated that the person he observed looked younger than Petitioner and weighed more than Petitioner, Cox did not see the individual's face. In addition, Cox's statement reflects that his description of the individual's height and weight were estimates. Most importantly, Chang identified Petitioner by his voice and appearance based on her familiarity with him from three years of weekly interactions, and Travis, who saw Petitioner's face, identified him with ninety percent certainty. Therefore, a reasonable probability does not exist that Cox's testimony regarding the appearance of the perpetrator would have resulted in a different outcome had he been called as a witness.

Likewise, Cox's statement that the perpetrator was driving an older model Honda Accord that had a "back vent window" with tape around it, *see* Doc. 6 at 29, does not undermine Court's description of the perpetrator's getaway vehicle. Similarly, Soto's attestation that when he bought Petitioner's Honda Accord months after the offense, it could not exceed ten miles per hour, does not establish that the car could not do so at the time of the offense. Moreover, there was no evidence presented at trial regarding the speed the car was traveling when it left the scene of the offense. *See* Doc. 6 at 261-77.

Finally, the jury heard evidence from which it could have concluded that Petitioner's vehicle was not the one used in the offense, namely that Court told police that the perpetrator's vehicle was a two door versus a four door. Even assuming Cox and Soto's testimony would have cast further doubt on whether Petitioner's Honda Accord was used in the offense, Chang and Travis identified Petitioner as the perpetrator. In sum, Petitioner has not demonstrated that counsel was

deficient for failing to call Cox and Soto as witnesses nor has he established a reasonable probability exists that the outcome of the trial would have been different had counsel done so. Accordingly, ground four is denied.

**E. Ground Five**

Petitioner contends counsel rendered ineffective assistance by failing to object and move for a mistrial when Chang testified that Petitioner was in jail prior to trial. (Doc. 1 at 18-20). According to Petitioner, Chang's testimony was inadmissible evidence of prior bad acts. (*Id*.).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc.6-1 at 44-45). The state court noted that generally testimony that a defendant has been in jail or is in jail is inadmissible and subject to objection. (*Id*.). The state court determined, therefore, that counsel could have objected to Chang's statement but concluded that no prejudice resulted from counsel's failure to do so. (*Id*. at 44-45). The state court reasoned that under Florida law a mistrial may be granted only when the error is so prejudicial as to vitiate the entire trial and Chang's single statement did not warrant a mistrial. (*Id*. at 44). The state court recognized that had counsel objected, a curative instruction would have been given. The state court determined that Petitioner had not demonstrated that a curative instruction would have resulted in a different outcome because the jury realized Petitioner had been arrested and the "most likely interpretation the jury made" after hearing Chang's statement was that he was unable to post bail pending trial on the attempted robbery charge. (*Id.* at 44-45). The Fifth DCA affirmed *per curiam*. (*Id*. at 102).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, *Strickland*. The record reflects that Chang explained on redirect that she did not want to participate in a controlled telephone call with Petitioner prior to trial

because she was afraid and "didn't know at that time he was in jail." (Doc. 6 at 256). The statement was isolated, made in explanation to questions initially raised by the defense in cross-examination, and did not intimate that Petitioner was being held on any other charge than the attempted robbery charge. Consequently, Petitioner has not shown a reasonable probability exists that the trial court would have granted a motion for mistrial had counsel requested one.

Moreover, a reasonable attorney may have refrained from objecting to the statement and requesting a curative instruction because a curative instruction could have emphasized Chang's single reference to Petitioner's incarceration. *See, e.g., Castillo v. Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons."). More importantly, Petitioner has not demonstrated a reasonable probability exists that the outcome of the trial would have been different had counsel objected given the strength of the evidence against Petitioner. Therefore, Petitioner has not established deficient performance or prejudice. Accordingly, ground five is denied pursuant to section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability ("COA") only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929,

934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the Court's assessment of his grounds debatable or wrong. Thus, the Court will deny Petitioner a COA.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) filed by Arturo Rosa is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a COA.

3. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 13th day of February, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
Arturo Rosa
Counsel of Record